UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| NICHOLAS P. AQUINO and JUDY LYNN AQUINO, husband and wife,<br><br>Plaintiffs,<br><br>v.<br><br>UNITED STATES OF AMERICA and STEVEN P. JEWITT, M.D.,<br><br>Defendants. | Case No. C04-2008L<br><br>ORDER DENYING MOTION TO DISMISS AND FOR SUMMARY JUDGMENT |

## I. INTRODUCTION

This matter comes before the Court on a "Motion to Dismiss and for Summary Judgment" (Dkt. # 28) ("Motion") filed by defendant Dr. Steven P. Jewitt and joined by defendant the United States (Dkt. # 31) (collectively, "defendants"). Dr. Jewitt prescribed hydrocodone[1] for plaintiff, Nicholas Aquino, and authorized refills of the prescription on at least four occasions. Dr. Jewitt had Mr. Aquino deliver a portion of the prescribed drugs back to Dr. Jewitt for Dr. Jewitt's personal use. Over this period, Mr. Aquino became addicted to these pain killers. Mr. Aquino and his wife, Judy Lynn Aquino (collectively, "plaintiffs") now bring claims against both Dr. Jewitt and the United States, as operator of the VA Health Care System in Seattle ("VA").

---

[1] The specific prescriptions were for Vicodin and/or Valium.

ORDER DENYING MOTION TO DISMISS
AND FOR SUMMARY JUDGMENT- 1

1     Plaintiffs' first claim alleges that the United States was negligent because the pharmacy
2 personnel at the VA breached their duty under Washington law to monitor the refilling of Mr.
3 Aquino's prescription. In addition, plaintiffs allege that the United States is liable because the
4 VA negligently supervised Dr. Jewitt, failing to recognize he was over-prescribing addictive
5 narcotics. Plaintiffs seek damages for Mr. Aquino's aggravated mood and personality disorders,
6 alcohol abuse, relational problems with his wife and daughter, increased addictions, and abusive
7 conduct towards his wife. See Complaint at ¶¶ 4-7.

8     In plaintiffs' second claim, Mrs. Aquino alleges that these acts of negligence caused her
9 damages including aggravation of post traumatic stress disorder, anxiety disorder, relational
10 problems with her husband, physical and emotional abuse from her husband, and loss of
11 consortium. Id. at ¶¶ 9-12.

12     Plaintiffs' third claim alleges that Dr. Jewitt negligently failed to uphold the standard of
13 care ordinarily possessed by psychiatrists when he prescribed hydrocodone to plaintiff. In
14 addition, plaintiffs allege that Dr. Jewitt's conduct amounted to intentional infliction of
15 emotional distress. Id. at ¶¶ 17-20. Defendants focus their arguments on plaintiffs' third claim
16 and have not presented specific arguments to dismiss claims one and two, which are largely
17 dependent on the resolution of claim three.

18     For the reasons set forth in this Order, the Court DENIES defendants' Motion to Dismiss
19 and for Summary Judgment.

20                        **II. DISCUSSION**
21 **A.    Background Facts**

22     Mr. Aquino is a veteran who received medical care through the VA. He received
23 psychiatric care from Dr. Jewitt from December 5, 1997 through October 8, 2002. In late 2001,
24 Mr. Aquino slipped and fell, injuring his back. Dr. Jewitt wrote him a prescription for
25 hydrocodone and asked Mr. Aquino to split the prescription with him. Twice Mr. Aquino had
26 his prescription filled at the VA pharmacy and twice he delivered half of the prescription to Dr.

27
28 ORDER DENYING MOTION TO DISMISS
   AND FOR SUMMARY JUDGMENT- 2

1  Jewitt.  In May of 2002, Dr. Jewitt called in a prescription to an outside pharmacy, the Bartell
2  Drugs in White Center, and Mr. Aquino again had the prescription filled.  This time Mr. Aquino
3  gave the entire prescription to Dr. Jewitt.  Mr. Aquino twice refilled the prescription at the same
4  Bartell Drugs location and again gave the entire prescription to Dr. Jewitt.  The second of these
5  two refills occurred after Dr. Jewitt called Mr. Aquino at home and asked him to go pick the
6  prescription up for him.  Dr. Jewitt reimbursed Mr. Aquino's $10 co-pay for each of the Bartell
7  Drugs purchases.  In total, Mr. Aquino did five "favors" for Dr. Jewitt.

8       On October 8, 2002, Mr. Aquino voluntarily admitted himself into the psychiatric ward
9  of the VA hospital.  He informed his doctors about the prescriptions that Dr. Jewitt had written
10 for him.  On October 17, 2002, Mr. Aquino reported sharing his prescription with Dr. Jewitt to
11 VA Patient Advocate Carolyn Batson.  An investigation ensued and Dr. Jewitt was ultimately
12 charged with knowingly and intentionally acquiring a controlled substance by misrepresentation,
13 deception, and subterfuge in violation of 21 U.S.C. § 843(a)(3) and (d).  Dr. Jewitt pled guilty to
14 the charge in May 2003.  See Declaration of John W. Schedler in Support of Defendant Jewitt's
15 Motion for Dismissal and Summary Judgment ("Schedler Decl."), Ex. C.  Mr. Aquino was not
16 charged, though Resident Agent in Charge Gregory M. Bratten ("Agent Bratten"), Office of the
17 Inspector General at the VA, asserts that Mr. Aquino was also guilty of the same crime.

18      Plaintiffs now bring this civil suit against the United States under the Federal Tort Claims
19 Act and Dr. Jewitt for negligence, malpractice, and intentional infliction of emotional distress,
20 based on the consequences plaintiffs have suffered from Mr. Aquino's addiction to
21 hydrocodone.

22 **B.     Motion to Dismiss Under Fed. R. Civ. P. 12(b)(6)**

23      On a motion to dismiss, the allegations in the complaint must be taken as true.  Hughes v.
24 Rowe, 449 U.S. 5, 10 (1980).  The Court will dismiss a claim if, after reviewing the complaint in
25 the light most favorable to the plaintiff, there is no set of facts that, if proven, would entitle the
26 plaintiff to relief.  SmileCare Dental Group v. Delta Dental Plan of California, Inc., 88 F.3d 780,

27

28 ORDER DENYING MOTION TO DISMISS
AND FOR SUMMARY JUDGMENT- 3

783 (9th Cir. 1996).

Defendants assert that plaintiffs' claims must be dismissed under the doctrines of in pari delicto and assumption of risk. See Motion at 5. Under the maxim of in pari delicto, the defendants must prevail when the parties are of equal guilt. Goldberg v. Sanglier, 96 Wn.2d 874, 882 (1982). "Where the parties are not equally culpable, the defense of in pari delicto is not appropriate." Id. at 882-83. The court continues, "[w]here the conduct of the party who seeks to enlist support of the doctrine outrages public sensibilities more than the conduct of the party against whom the doctrine is sought to be applied, courts will not support the application of the rule." Id. at 883. Defendants base their reliance on this defense on their allegation that both Dr. Jewitt and Mr. Aquino conspired to commit a crime concerning the acquisition and distribution of hydrocodone. See Motion at 9. However, there is a factual issue that precludes granting a motion to dismiss, namely, whether both parties were indeed of equal guilt. Moreover, defendants' assertion that Mr. Aquino assumed the risk by participating in a crime also assumes he did so voluntarily. These are factual issues that cannot properly be resolved by reviewing the complaint. Therefore, defendants' motion to dismiss under Fed. R. Civ. P. 12(b)(6) is DENIED.

**C.     Motion for Summary Judgment**

On a motion for summary judgment, the Court must "view the evidence in the light most favorable to the nonmoving party and determine whether there are any genuine issues of material fact . . . ." Holley v. Crank, 386 F.3d 1248, 1255 (9th Cir. 2004). All reasonable inferences supported by the evidence are to be drawn in favor of the nonmoving party. See Villiarimo v. Aloha Island Air, Inc., 281 F.3d 1054, 1061 (9th Cir. 2002). "[I]f a rational trier of fact might resolve the issues in favor of the nonmoving party, summary judgment must be denied." T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 631 (9th Cir. 1987). Having reviewed the evidence in the light most favorable to plaintiffs, the Court finds that summary judgment is not appropriate in this matter.

ORDER DENYING MOTION TO DISMISS
AND FOR SUMMARY JUDGMENT- 4

### 1. In Pari Delicto

Defendants allege that plaintiffs come forth with "unclean hands." See Motion at 7. According to defendants, Mr. Aquino's involvement in the scheme to acquire and distribute hydrocodone indicates equal guilt on the parts of both parties. Mr. Aquino admitted to Agent Bratten that he knew that his conduct was "wrong." See Deposition of Gregory Bratten at 38: 13-20 ("Bratten Dep."); Schedler Decl. at 3 ("Mr. Aquino stated that he knew that the favors that he had done for Jewitt had been wrong."). Agent Bratten testified that he believes that Mr. Aquino was an unindicted co-conspirator in violation of federal law. See Bratten Dep. at 19: 12-19.

Although plaintiffs admit some fault, they argue that the fault of Dr. Jewitt far outweighs Mr. Aquino's own fault and thus, the two parties are not of equal guilt as required by the in pari delicto doctrine. See Response at 3 (citing Goldberg v. Sanglier, 96 Wn.2d 874, 882-83 (1982)). The evidence submitted by defendants notes, "Mr. Aquino stated that he felt that his continuing to receive psychiatric care was dependent upon his acquiring hydrocodone for Jewitt." See Schedler Decl., Ex. D at 3, 4. Agent Bratten's report provides sufficient evidence to reasonably infer that Mr. Aquino felt coerced into doing "favors" for Dr. Jewitt out of fear that his psychiatrist would no longer care for him.

Plaintiffs provide evidence that corroborates Mr. Aquino's statement. Plaintiffs provide testimony from Dr. Robert Olsen, who opines that "Dr. Jewitt, who was in a powerful position as a healer . . . exploited Nicholas Aquino's vulnerabilities . . . . Dr. Jewitt and Nicholas Aquino were not equal partners who were involved in the 'criminal conspiracy' . . . ." See Declaration of Robert B. Olsen, M.D. ("Olsen Decl.") at ¶ 8. Moreover, Dr. Olsen notes that Dr. Jewitt manipulated Mr. Aquino by mismanaging the "transference phenomenon." Id. at ¶ 7. According to Dr. Olsen, transference is a universally recognized concept in psychiatry where emotional bonds are developed between patient and psychiatrist that inhibit the patient's ability

to recognize the boundaries of the psychiatrist-patient relationship.[2] Id. Dr. Olsen opines that Dr. Jewitt used the transference phenomenon to gain control over Mr. Aquino. Id. at ¶¶ 7, 9 (comparing Dr. Jewitt's exploitation of Mr. Aquino to that of a psychiatrist who uses his/her power to sexually seduce a patient). There is also evidence that Mr. Aquino suffered a traumatic head injury that affected his cognitive ability. See Schedler Decl., Ex. D at 10 ("Jewitt stated that Mr. Aquino had an organic brain injury from blunt force trauma and may not know the difference between right and wrong."). Therefore, there is an issue of material fact as to whether Mr. Aquino, who was seemingly vulnerable to exploitation, was as blameworthy as defendant, as required by the in pari delicto doctrine.

In addition, defendants' evidence suggests that Dr. Jewitt may have involved as many as eight other patients of his in similar prescription schemes. See Bratten Dep. at 22: 2-6; Deposition of Robert Barnes, M.D. at 30: 8-10. In fact, Dr, Jewitt concedes to "having multiple of his patients acquire controlled substances for [him] by misrepresentation and deception." See Schedler Decl., Ex. C at 4. This certainly raises a material question as to whether Dr. Jewitt's habitual exploitation of his power over patients outrages public sensibilities more than the conduct of Mr. Aquino in this matter. See Goldberg, 96 Wn.2d at 883.

In its reply, the United States notes that "[c]ourts have repeatedly struck down the claim that clients who committed criminal acts based upon the advice of an attorney had less guilt and

---

[2] For a description of the transference phenomenon see Simmons v. United States, 805 F.2d 1363, 1365 (9th Cir. 1986), cited by American Home Assurance Co. v. Cohen, 124 Wn.2d 865, 872 n.8 (1994) ("What the notion of transference assumes is that as therapy develops, and if therapy is working, the client comes to either consciously or unconsciously, or both, regard the therapist as a child might regard the parent. This is important because in order for a therapist to have positive powerful impact in helping the client to change and heal, the therapist has to have the same kind of authority power in a positive way with the client that the parents once had, or the parental figures once had in a negative way with the client while the client was growing up. And, so what happens when therapy is working . . . is that this transference relationship grows so that the client comes to experience the therapist as a powerful, benevolent parent figure.").

ORDER DENYING MOTION TO DISMISS
AND FOR SUMMARY JUDGMENT- 6

therefore should be allowed to profit from their crime despite the doctrine of in pari delicto." See United States' Reply at 2. The United States argues that the mere existence of a physician-patient relationship is not sufficient to conclude that there was an unequal balance of power between Mr. Aquino and Dr. Jewitt. Id. at 1. While this may be true in some cases, the United States' argument is not persuasive under the facts of this case.

In the cases the United States cites, attorneys allegedly advised their clients to commit perjury.[3] There are two critical distinctions between this line of cases and the present matter. First, there is a difference between the physician-patient relationship and the attorney-client relationship, especially where, as here, the physician is a psychiatrist. Second, Mr. Aquino stated that he felt that his continuing care and receipt of medication were dependent on conducting favors for Dr. Jewitt. This is distinguishable from the pecuniary interests involved in the cases the United States cites. Additionally, in the cases cited by the United States, there was no evidence that the clients felt as though they had to commit perjury in order to keep from losing their legal services.

For the reasons noted above, the Court finds that granting summary judgment on in pari delicto grounds is inappropriate. Plaintiffs have provided evidence that Mr. Aquino was vulnerable to exploitation by his psychiatrist, there was an unequal balance of power in the physician-patient relationship, and that Mr. Aquino felt some degree of coercion to continue conducting favors for Dr. Jewitt. Whether the parties were equally at fault presents an issue of material fact to be determined at trial.

**2.  Assumption of Risk**

Defendants also argue that plaintiffs' claim should be dismissed because Mr. Aquino "assumed the risk of damages when he voluntarily participated in the crime." See Motion at 12.

---

[3] See Pantely v. Garris, Garris & Garris, P.C., 180 Mich. App. 768, 776-78 (1989); Evans v. Cameron, 121 Wis.2d 421, 427 (1985); Feld & Sons, Inc., v. Pechner, Dorfman, Wolfee, Rounuck, & Cabot, 312 Pa. Super. 125, 132 (1983).

ORDER DENYING MOTION TO DISMISS
AND FOR SUMMARY JUDGMENT- 7

One of the elements of assumption of risk is that the plaintiff voluntarily chose to encounter the risk. Kirk v. Washington State Univ., 109 Wn.2d 448, 453-55 (1987). Defendants' argument presupposes that Mr. Aquino and Dr. Jewitt were on equal footing. As addressed above, coercion may be inherent in the psychiatrist-patient relationship. The Aquinos have provided sufficient evidence to allow the claim to proceed to trial to determine whether Mr. Aquino's participation in the scheme was voluntary.

Defendants further argue that Mr. Aquino's decision to accept the hydrocodone prescription indicates that he assumed the risk of addiction. See Motion at 14-17. Dr. Olsen opines that "Dr. Jewitt violated the standard of care of a reasonably prudent psychiatrist in his care and treatment of Nicholas Aquino . . . not only for prescribing Vicodin and Valium without informed consent, but also in over-prescribing . . . ." See Olsen Decl. at ¶ 6. According to defendants' position, the responsibility lies with patients who have suffered addictions in the past to decline prescriptions from their doctors for medications that could be addictive. However, according to Dr. Olsen, the duty is on the doctor to recognize a patient prone to addiction. Id. Moreover, there is no evidence that Mr. Aquino knew that the medications prescribed were indeed of the type to which he could become addicted. There is also no evidence that Dr. Jewitt warned Mr. Aquino of the potential for addiction to hydrocodone. To hold Mr. Aquino responsible would require patients to understand the side effects of medications to the same degree as their doctors. This is an untenable and unsupported position asserted by defendants.

Defendants argue that plaintiffs have not supplied the type of evidentiary material necessary to defeat summary judgment. See Reply at 3. Defendants allege first, there must be information related to what took place, an act, an incident, or a reality, as distinguished from supposition or opinion. Moreover, they argue "[t]he opinion of an expert which is only a conclusion or which is based on assumptions is not evidence which satisfies the summary judgment standards because it is not evidence which will take the case to the jury." Id. (citing

ORDER DENYING MOTION TO DISMISS
AND FOR SUMMARY JUDGMENT- 8

John Doe v. Blood Center, 117 Wn.2d 772, 787 (1991)).  These arguments fail.

Plaintiffs provide evidence that Dr. Jewitt "mismanaged the 'transference phenomenon' and thus breached the standard of care." See Olsen Decl. at 2.  This expert opinion is based on Mr. Aquino's records at the VA, defendants' motion to dismiss, and in-person interviews of both Nicholas Aquino and Judy Aquino.  Id. at 1-2.  Dr. Olsen notes that the "transference phenomenon" is "universally recognized" and defendants make no attempt to rebut this assertion.  Id. at 2.  It is Dr. Olsen's opinion, after conducting interviews and reviewing the pertinent records, that Mr. Aquino and Dr. Jewitt were not on equal footing, "with the psychiatrist . . . determining where the boundaries of the relationship [were]." Id.  This evidence directly corroborates Mr. Aquino's statement to Agent Bratten that "he felt that his continuing to receive psychiatric care was dependant upon his acquiring hydrocodone for Jewitt." See Schedler Decl., Ex. D at 3.  These two pieces of evidence support plaintiffs' theory in opposition of summary judgment that Mr. Aquino 1) was not equally as guilty as Dr. Jewitt and 2) did not voluntarily assume the risk.[4]

Defendants argue that a party cannot submit a self-serving affidavit to create an issue of fact for trial.  See Reply at 3 (citing Marshall v. AC&S, Inc., 56 Wn. App. 181, 185 (1989)).  The Declaration of Nicholas P. Aquino ("Aquino Decl.") is self-serving and contains some contradictory statements.  See Aquino Decl. at 1 (claiming no knowledge that conduct was wrong, which contradicts statements in the Bratten Report).  For this reason, the Court has not based its conclusions on Mr. Aquino's declaration.  Instead, the Court has based much of its decision on Mr. Aquino's statements in Agent Bratten's report.  See Schedler Decl., Ex. D. Agent Bratten's investigation and subsequent report occurred while Mr. Aquino was admitted to

---

[4] Mr. Aquino's statement to Agent Bratten that "Mr. Aquino stated that he felt that his continuing to receive psychiatric care was dependent upon his acquiring hydrocodone for Jewitt" is sufficient on its own to defeat summary judgment as it presents a material issue of fact related to both blameworthiness and voluntariness.  Dr. Olsen's declaration, on its own, may suffer from the ailments that defendants allege.  However, to the extent it corroborates Mr. Aquino's statement to Agent Bratten, the Court finds Dr. Olsen's declaration worthy of consideration.

ORDER DENYING MOTION TO DISMISS
AND FOR SUMMARY JUDGMENT- 9

the VA in late 2002.  Id.  It is unlikely at that point that Mr. Aquino anticipated initiating a lawsuit against Dr. Jewitt.  For that reason, the Court does not find the statements contained in Agent Bratten's report self-serving under Marshall.

Lastly, defendants allege that even if Dr. Jewitt owed Mr. Aquino a duty, Mr. Aquino had the last clear chance to avoid his alleged injuries.  See Motion at 19.  Defendants base this claim on the assumption that there was no duress or coercion and that Mr. Aquino should have simply refused Dr. Jewitt's request for a favor.  See id.  Again, as discussed above, the key issues to be determined at trial are whether the parties were on equal footing in a criminal conspiracy and whether Dr. Jewitt exerted coercive influence over Mr. Aquino.  In addition, defendants have not offered any evidence that Mr. Aquino knew that hydrocodone was addictive.  Conversely, plaintiffs' expert notes that Dr. Jewitt failed to obtain informed consent from Mr. Aquino.  Olsen Decl. at ¶ 6.  Without some evidence that Mr. Aquino knew hydrocodone was addictive, defendants' cannot prove that he had the last clear chance to avoid his injuries.  As such, granting summary judgment on last clear chance grounds is inappropriate.

### III. CONCLUSION

The Court indeed recognizes that Mr. Aquino is not without fault and the judicial system should not aid wrongdoers in profiting from their illicit activities.  Moreover, defendants assert a colorable argument as to why plaintiffs should not be allowed to recover.  However, this case turns on the facts and plaintiffs have shown there are issues of material fact that must be resolved at trial.

For the foregoing reasons, the Court DENIES defendants' Motion to Dismiss and for Summary Judgment (Dkt. #28).

DATED this 27th day of May, 2005.

*/s/ Robert S. Lasnik*
Robert S. Lasnik
United States District Judge

ORDER DENYING MOTION TO DISMISS
AND FOR SUMMARY JUDGMENT- 10